## EMPIRE TRUST COMPANY *v.* CAHAN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 318. Argued April 29, 1927.—Decided May 31, 1927.

Where an adult son, under an unlimited power of attorney given by his father, drew checks on his father's accounts in two banks, to his own order or the order of a third bank, signing them with his father's name by himself as attorney, and deposited them to his own private account in the third bank, and subsequently (the checks having been honored by the drawee banks) drew out the funds from the third bank and applied them to his own use, and these transactions went on for over two years, the notice gained from the form of his checks was not sufficient to charge that bank with knowledge of the misappropriations. P. 479.

9 F. (2d) 713, reversed.

CERTIORARI (271 U. S. 653) to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court, recovered from the petitioner by the respondent.

*Mr. Van Vechten Veeder,* with whom *Messrs. William Lee Woodward* and *William J. Dean* were on the brief, for petitioner.

The fact that an agent acts for his own benefit without actual authority is immaterial as against a third person who deals with the agent on the face of his apparent authority. *North River Bank* v. *Aymar,* 3 Hill (N. Y.) 262; *Hambro* v. *Burnand,* [1904] 2 K. B. 10; *Lloyd* v. *Grace & Co.,* [1912] A. C. 716; *Nat. Safe Deposit Co.* v. *Hibbs,* 229 U. S. 391; *Warren-Scharf Co.* v. *Comm. Nat. Bank,* 97 Fed. 181.

A fiduciary having general authority to draw funds must necessarily have power to direct their disposition. The deposit with the bank did not operate to take the funds out of the fiduciary's control. So long as the funds remained in his control they were not diverted. Accord-

ingly, it is almost universally held that a fiduciary, of whatsoever kind, may deposit the funds of his principal in a bank to his individual credit. *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394; *Kendall* v. *Fidelity Trust Co.,* 230 Mass. 238; *Santa Marina Co.* v. *Canadian Bank,* 254 Fed. 391. Knowledge on the part of the bank of the nature of the funds received does not affect the character of the act. The bank has the right to assume that a fiduciary will apply the funds to their proper use under the trust. *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Eastchester* v. *Mt. Vernon Trust Co.,* 173 App. Div. 482; *Newburyport* v. *First Nat. Bank,* 216 Mass. 304; *Safe Deposit Co.* v. *Bank,* 194 Penn. St. 334; *Munnerlyn* v. *Bank,* 88 Ga. 333; *Martin* v. *Bank,* 66 Kan. 655; *State* v. *Farmers Bank,* 112 Neb. 840; *Charleston Co.* v. *Exch. Banking Co.,* 129 S. C. 290; *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394; *Kendall* v. *Fidelity Trust Co.,* 230 Mass. 238; *Goodwin* v. *Amer. Nat. Bank,* 48 Conn. 550; *Mott Iron Works* v. *Metropolitan Bank,* 78 Wash. 294; *Gray* v. *Johnston,* L. R. 3 Eng. & Ir. App. 1. The case of *Corporation Agencies, Ltd.,* v. *Home Bank of Canada,* [1927] A. C. 318, is applied to the precise issue now in question, and arises out of the activities of this same fiduciary. The Privy Council held that the defendant was not put on notice.

If the respondent could deposit the funds in his own account, he could draw them out. If the former constituted no notice of diversion, neither would the latter. The law does not require the bank to assume the hazard of correctly reading in each check the purpose of the drawer. *Bischoff* v. *Yorkville Bank, supra; Kendall* v. *Fidelity Trust Co., supra; Newburyport* v. *First Nat. Bank, supra; Goodwin* v. *Amer. Nat. Bank, supra; Havana Central R. R.* v. *Knickerbocker Trust Co.,* 198 N. Y. 422; *Gate City Assn.* v. *Nat. Bank of Comm.,* 126 Mo. 82; *McCullam* v. *Third Nat. Bank,* 209 Mo. App. 266.

The petitioner had no actual knowledge of any infirmity or defect in the checks. Neither their form nor the circumstances of their negotiation by the fiduciary made petitioner guilty of bad faith in receiving them for his account. There is no distinction between the checks naming petitioner as payee and those naming the fiduciary. A payee as well as an endorsee may be a holder in due course. *Armstrong* v. *Amer. Exch. Bank,* 133 U. S. 433; *Boston Steel Co.* v. *Steuer,* 183 Mass. 140; *Colonial. Ranching Co.* v. *First Nat. Bank,* 227 Mass. 12; *Bergstrom* v. *Ritz Carlton,* 171 App. Div. 776, 220 N. Y. 569; *Drumm Const. Co.* v. *Forbes,* 305 Ill. 303; *Johnston* v. *Knipe,* 260 Pa. 504; Brannon, Negotiable Instruments Law, 3d ed., pp. 52–53.

The court below applied an erroneous criterion of notice. *Gerseta Corp.* v. *Wessex Co.,* 3 Fed. (2d) 236; *Cheever* v. *Pittsburgh Co.,* 150 N. Y. 59; *Murray* v. *Lardner,* 2 Wall. 110; *Hotchkiss* v. *National Banks,* 21 Wall. 354.

*Mr. Charles E. Hughes, Jr.,* with whom *Messrs. Augustus L. Richards, Bertram F. Willcox,* and *Harold L. Smith* were on the brief, for respondent.

The deposit by a fiduciary in his individual bank account of checks which show on their face that they represent fiduciary funds is sufficient evidence of misappropriation to impose upon the bank a duty of inquiry. *Farmers Co.* v. *Fidelity Trust Co.,* 86 Fed. 541; *Havana Cent. R. R.* v. *Cent. Trust Co.,* 204 Fed. 546; *Okla. State Bank* v. *Galion Iron Works,* 4 F. (2d) 337; *Wagner Co.* v. *Bank,* 228 N. Y. 37; *Mitchell* v. *First Nat. Bank,* 203 Ky. 770; *Duckett* v. *Bank of Balto.,* 88 Md. 8; *U. S. F. & G. Co.* v. *Bank,* 127 Tenn. 720; *Bank* v. *McPherson,* 102 Miss. 852; *U. S. F. & G. Co.* v. *Adoue,* 104 Tex. 379; *Underwood* v. *Bank of Liverpool,* [1924] 1 K. B. 775; *Toronto Club* v. *Imperial Trust Co.,* 25 Ont.

L. Rep. 330. Distinguishing, *Conn. Sav. Bank* v. *Nat. Surety Co.*, 294 Fed. 261.

The feature of benefit to the recipient of the funds is immaterial, and the reason for the rule is that the use of the funds by the fiduciary to satisfy his individual indebtedness is clear evidence of use of the fiduciary funds for individual purposes. That the test is notice of misappropriation rather than benefit received by the bank is made clear by the decision of this Court in *Manhattan Bank* v. *Walker*, 130 U. S. 267. See also, *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Havana Cent. R. R.* v. *Knickerbocker Trust Co.*, 135 App. Div. 316; *Niagara Woolen Co.* v. *Pacific Bank*, 141 App. Div. 265.

The difficulty of imagining any reason why the principal's interests would be promoted by transfer of his funds to his agent's individual bank account is sufficient evidence of the violence of the assumption that the fiduciary would use the funds in the principal's interest.

It is inconsistent to argue that the bank is not entitled to assume that money rightfully belongs to a fiduciary when it takes it in payment of an indebtedness owed to it, but is entitled so to assume when it deposits it to the fiduciary's individual account and so places him in a position to use it for the payment of his individual indebtedness to others. We see no inconvenience in a rule which would require banks to give general instructions to their tellers not to permit, without special authority based upon adequate inquiry, the deposit to individual credit of a check drawn or endorsed by a fiduciary in his fiduciary capacity. Nor do we perceive any possibility of embarrassment as between banks and their customers. Banks are now obliged to explain to their depositors that under the law they cannot take fiduciary funds in payment of an individual indebtedness of the fiduciary.

The principle that the form of the check charges the bank with notice that the funds are fiduciary funds is too deeply rooted now to be questioned. *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Hale* v. *Windsor Sav. Bank*,

90 Vt. 487; *Brovan* v. *Kyle,* 166 Wis. 347; *Amer. Bonding Co.* v. *Fourth Nat. Bank,* 205 Ala. 652; *Nat. Bank* v. *Insurance Co.,* 104 U. S. 54.

The fiduciary did not have actual authority either to draw checks for his own benefit or to dispose for his own benefit of the checks when drawn. He had no apparent authority to do these things as to any third person who was put on notice that he was acting for his own benefit. *Bank of N. Y.* v. *Amer. Dock Co.,* 143 N. Y. 559; *Park Hotel Co.* v. *Fourth Nat. Bank,* 86 Fed. 742. Distinguishing, *North River Bank* v. *Aymar,* 3 Hill 262; *Strainer* v. *Tysen, id.* 279; *Nat. Safe Deposit Co.* v. *Hibbs,* 229 U. S. 391.

The weight of authority, with respect to agents, is that they are not entitled to deposit their principals' funds to individual credit, and that a bank which permits such a deposit is liable for a resulting misappropriation. Distinguishing, *Safe Deposit Co.* v. *Bank,* 194 Pa. St. 334; *Goodwin* v. *Amer. Nat. Bank,* 48 Conn. 550; *Charleston Co.* v. *Exch. Trust Co.,* 129 S. C. 290; *McCullam* v. *Third Nat. Bank,* 209 Mo. App. 266; *Corp. Agencies* v. *Home Bank of Canada,* [1927] A. C. 318.

Certification or acceptance by drawee banks has no effect on petitioner's duty of inquiry. *First Nat. Bank* v. *Leach,* 52 N. Y. 350; *First Nat. Bank* v. *Whitman,* 94 U. S. 343.

It is generally held that one who takes a negotiable instrument has notice within the meaning of § 95 Neg. Inst. L., if he has knowledge of facts which put him on inquiry. *Hoberg* v. *Sofranscy,* 217 App. Div. 546; *Union Nat. Bank* v. *Bluff City Bank,* 152 Tenn. 486; *Rochester Road Co.* v. *Paviour,* 164 N. Y. 281.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit brought by the respondent to charge the petitioner with liability for the proceeds of checks drawn upon the agents of the Bank of Montreal or the Guar-

anty Trust Company, in New York, and deposited with the petitioner by the respondent's son. The respondent, a Canadian lawyer, had accounts with the two banks named and, in 1916, gave to his son powers of attorney to draw checks upon them, both powers being general and with no qualification as to the purposes for which such checks might be drawn. Beginning in July of that year, and from time to time down to October, 1918, the son drew checks signed with his father's name by himself as attorney against his father's two accounts, payable seventeen to his own order, three to the order of the petitioner, and deposited them to his own private account with the petitioner. All the checks but two were certified by the Guaranty Trust Company or accepted by the other bank as the case might be. Subsequently the son drew out these funds and applied them to his own use. The respondent did not discover the fraud until the end of 1919, at which time his son absconded. The petitioner had no knowledge that the son was misappropriating his father's money and no notice other than what was given by the form of the checks. The District Court and the Circuit Court of Appeals for the Second Circuit held that notice sufficient to charge the petitioner as matter of law and gave judgment against it, the Circuit Court of Appeals adding interest on the several items from the date when they were credited to the son. 9 F. (2d) 713. A writ of certiorari was granted by this Court. 271 U. S. 653.

No doubt the question is, as was said by the Circuit Court of Appeals, a question of degree, like most questions in the law; but we are of opinion that the Court below applied too strict a rule to an ordinary business transaction. The Court itself pronounced it "a hard rule as business is ordinarily conducted," and seemingly adopted it as much because of authority by which it felt bound as because it confidently thought the rule right.

The petitioner had notice that the checks were drawn upon the respondent's account, but they were drawn in pursuance of an unlimited authority. We do not perceive on what ground the petitioner could be held bound to assume that checks thus lawfully drawn were required to be held or used for one purpose rather than another. In the case of checks drawn by a corporation, not likely to disburse except for corporate purposes, there might be stronger reasons for requiring a bank to be on its guard if an officer having power to draw them deposited checks for considerable sums to his private account; but it recently has been held otherwise by the Judicial Committee of the Privy Council. *Corporation Agencies, Limited* v. *Home Bank of Canada* [1927] A. C. 318. And when the two parties are father and son, both of mature years and in good standing, secret limitations of the power are a pure matter of speculation into which it seems to us extravagant to expect the bank to inquire. The person reposing confidence in the son was not the petitioner but the respondent, *National Safe Deposit, Savings & Trust Co.* v. *Hibbs*, 229 U. S. 391, 397, and he himself tells us that his confidence was unlimited. He put his deposits absolutely into his son's power; and the son, if he drew currency, as he might, could do with it as he saw fit. The notice to the bank was notice only of this relation of the parties. The petitioner, in permitting the son to draw out the money was permitting only what it, like the respondent's banks, would have been bound to allow even if the deposit had been earmarked as a trust. The form in which the withdrawals took place does not appear. They might have been, like the deposits, in checks to the son's own order. All that is known is that the respondent did not get the benefit of them. But we do not place our decision upon that narrow ground. For in addition to what we have said, the transactions went on for over two years and the petitioner fairly might expect the respond-

ent to find it out in a month or two if anything was wrong. Careful people generally look over their bank accounts rather frequently.

It is very desirable that the decision of the Courts of the United States and that of the highest Court of the State where the business was done, should agree, as was recognized by the Circuit Court of Appeals. The result to which we come restores that agreement, at least when the checks are certified or accepted by the banks upon which they are drawn, as was the case here with all but two. *Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394. The certification did not import a statement by the certifying bank that, besides the right of the son to draw, established by the power of attorney, the purposes for which the checks were drawn were lawful and were known by the bank. As the Court remarks in the case cited "The transactions of banking in a great financial center are not to be clogged, or their pace slackened, by over-burdensome restrictions." 234 N. Y. 406.

*Judgment reversed.*